# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

UNITED STATES OF AMERICA,

               Plaintiff,

   v.

DORAN R. KRAUS, et al,

               Defendants.

CASE NO. C16-5449 BHS

ORDER GRANTING IN PART AND RENOTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION

This matter comes before the Court on Plaintiff the United States of America's (the "Government") motion for summary judgment and Defendant Doran R. Kraus's ("Kraus") motion to dismiss. Dkts. 68, 69. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby (1) grants in part and renotes the Government's motion and (2) denies Kraus's motion.

## I. PROCEDURAL HISTORY

On June 8, 2016, the Government filed its complaint against Kraus to reduce to judgment tax assessments for the years 2001–2004. Dkt. 1. On December 14, 2016, the Government moved to amend its complaint in order to add additional tax assessments for the years 2001–2007, foreclose federal tax liens on real property, and name additional parties, including Defendant Leanne V. Lao ("Lao"), who may claim an interest to the foreclosure as defendants. Dkt. 18. On January 26, 2017, the Court granted leave to

amend. Dkt. 22. On January 27, 2017, the Government filed its amended complaint. Dkt. 23.

On June 29, 2017, Kraus filed a motion to dismiss. Dkt. 57. On June 14, 2017, the Government responded. Dkt. 60. On July 27, 2017, Kraus filed an updated motion to dismiss. Dkt. 61. On August 11, 2017, the Government responded. Dkt. 62. On August 16, 2017, the Court entered an order denying Kraus's motions to dismiss. Dkt. 63.

On January 31, 2018, the Government moved for summary judgment. Dkt. 68. Also on January 31, 2018, Kraus filed a cross-motion for summary judgment, which he titled a "Dispositive Motion for Settlement." Dkt. 69. On February 16, 2018, the Government responded to Kraus's motion. Dkt. 71. On February 20, 2018, Kraus replied on his motion and responded to the Government's motion. Dkts. 72, 73. On February 21, Lao responded to the Government's motion. Dkt. 74. On February 27, 2018, the Government replied to Lao's response. Dkt. 78. On March 21, 2018, Kraus filed a "revamped-updated" response to the Government's motion. Dkt. 79.

On March 26, 2018, the Government filed a notice of a reduction in the amount in tax assessments it seeks to reduce to judgment for the years 2001–2004. Dkt. 80.

## II. FACTUAL BACKGROUND

Kraus and Lao married in 1988. They divorced in 2010. They have three children who are 16, 24, and 27 years old. For most of the marriage, Kraus provided the marriage's only income. Lao stopped working around 1991 after the birth of their first child. Throughout the marriage, Kraus handled all of the family's finances. They had a joint bank account, and Kraus had a credit card, but Lao did not have her own bank

ORDER - 2

account or credit cards or write checks. Kraus gave cash to Lao to pay for household expenses.

Kraus also handled all tax matters during the marriage. Lao discovered Kraus had not been paying taxes when the IRS delivered letters to their house. Kraus told Lao that he would "take care of it" and Lao never tried to contact the IRS herself.

From the mid-1980s until 2006, Kraus was an equal partner with his brother Tad Kraus in running a retail jewelry store, Kraus Diamond Specialty, located in Lakewood, Washington. After the store closed in 2006, Kraus began making money through various temporary jobs.

Kraus stopped filing tax returns in 1999. He has claimed that tax returns are voluntary and only persons who are employed by the federal government or fill out a Form 1040 are required to pay taxes. Kraus did not file federal income tax returns for the years 2001–2004. Kraus Diamond Specialty did not file federal partnership returns for the years 2001–2004.

In 2003, Kraus and Lao sold their primary residence and moved to the subject property in this lawsuit: 5901 16th Street Court NE, Tacoma, Washington 98422, also known as Pierce County Parcel Number 602296-003-0, with a legal description as indicated in the Amended Complaint. They bought the subject property for $280,000 in 2003. They paid $116,000 using proceeds from the sale of their previous residence and Kraus payed an additional down payment with money earned from Kraus Diamond Specialty. The deed conveyed the subject property to "Doran Kraus and Leanne Kraus, Husband and Wife."

On April 8, 2005, Kraus and Lao signed a Land Trust Agreement that purported to create Trust No. K9L7K5D3-48-89999-B with "G. Michael" as trustee. The trust agreement stated that Mr. Kraus and Lao were each 50 percent beneficiaries of the trust. Kraus and Lao also signed a quitclaim deed conveying the subject property to the trust, which was recorded with the county auditor on April 19, 2005.

On July 26, 2005, Kraus and Lao executed an assignment of a beneficial interest in the trust purporting to assign their beneficial interest to "Fairview, a private contractual company." Fairview's listed address was the same as that of the subject property. Larell H. Baldwin signed the document on Fairview's behalf as the "Authorized Signatory for Sentinel Systems, Curator for Fairview." The assignment was never recorded.

Neither the trust nor Fairview paid anything in exchange for the transfers of interest in the subject property, while Kraus and Lao retained the "benefit" of residing there. At deposition, Baldwin testified that the transfers were Kraus's idea and he simply assisted Kraus by assembling the paperwork. Baldwin also testified that he would reconvey the property to Kraus at any time upon request. Kraus continued to make all decisions related to the property and pay all associated bills. The transfers placed no restrictions on Kraus or Lao's use of the property. Kraus and Lao have continued to live at the property and their children also continue to reside there.

It was Kraus who suggested that the subject property should be placed in the names of the trust and Fairview. While Lao signed the documents, she did not understand them and signed only because Kraus asked her to do so. Lao did not inquire as to why. At

deposition, Kraus and Lao say the transfers were for "estate planning purposes" and to protect the property from "frivolous lawsuits."

An IRS Revenue Agent was assigned to examine Kraus's 2001–2004 income taxes and Kraus Diamond Specialty's 2001–2004 partnership returns, but neither Kraus nor Kraus Diamond Specialty cooperated in the audits. Lacking cooperation, the IRS agent was required to reconstruct the income of Kraus Diamond Specialty by analyzing bank statements obtained from U.S. Bank. For the year 2001, the agent used bank deposits to estimate the business's income because the bank deposits significantly exceeded the business's reported gross receipts. For the years 2002–2004, the agent used reported gross receipts to estimate the business's income on the basis that they closely approximated bank deposits less sales tax. Due to lack of cooperation, the agent was unable to verify the payment of expenses or determine if bank withdrawals qualified as deductible expenses. Accordingly, the agent allowed only one deduction of $16,643 for rent in 2004 which she was able to independently verify.

The IRS agent ultimately determined that Kraus Diamond Specialty's partnership income was $602,567 in 2001, $729,682 in 2002, $733,946 in 2003, and $646,276 in 2004. The agent allocated 50 percent of this income to Kraus due to his status as an equal partner. The agent also determined that Kraus had $186,500 of capital gains in 2003 from the sale of a residence. Ultimately, the IRS agent determined that, after applicable credits and deductions, Kraus's tax deficiencies for the years 2001–2004 were as follows: $116,549 for 2001, $141,074 for 2002, $168,690 for 2003, and $114,854 for 2004. Additionally, Kraus was assessed statutory penalties and interest on the unpaid taxes.

In letters dated November 22, 2005, the IRS notified Kraus and Kraus Diamond Specialty of the audits' results, which included explanations of the adjustments. The IRS agent also attempted to contact Kraus and Kraus Diamond Specialty on multiple occasions to allow them to dispute the audit results. On January 19, 2006, the IRS issued notices of deficiency to Kraus for his 2001–2004 federal income tax liabilities. On June 12, 2006, the IRS assessed Kraus's 2001–2004 tax liabilities. The IRS then periodically assessed interest on the unpaid balance.

Kraus sent correspondence back to the IRS regarding his tax liabilities, but such correspondence only asserted frivolous arguments such as handwritten notes claiming that income tax is voluntary, or that that the government had "defaulted" on any claims for his taxes because it failed to promptly respond to a box of bank records he had mailed in. *See* Dkt. 68-11 at 104–108. Kraus also submitted letters raising frivolous arguments, such as his claims that tax laws are "administrative" and therefore not applicable to United States citizens, or that he could discharge his tax liabilities with a "money order" created by himself that the United States Treasury was purportedly obligated to pay as a result of the HJR–192, Public Law 73–10, which nullified the right of creditors to demand payment in gold. *See* Dkt. 68-19 at 13–15.

On August 10, 2009 and August 17, 2009, the IRS assessed civil penalties against Kraus under 26 U.S.C. § 6702 for frivolous tax submissions from 2001 to 2007. Kraus was assessed a penalty of $10,000 per year ($5,000 for each submission) for a total of $70,000 in penalties. *See* Dkt. 68-8. The IRS has since periodically assessed interest on the unpaid balance, bringing the amount to $93,826.44. *See* Dkt. 68-9.

After the divorce in 2010, Lao began working at Fred Meyer earning approximately $2,000 per month after taxes. Lao understands her tax obligations. She had filed her own tax returns before her marriage and has filed them since her divorce. Although Kraus and Lao are divorced and stated in their divorce petition that they separated in 2009, Kraus never moved out from the subject property and he continues to live there. Kraus currently pays the mortgage, real property taxes, and sewer bills, and has done so since 2003. These bills were in Kraus's name only until April, 2016. The bills are now in Kraus's and Lao's names, although Kraus continues to pay the sewer bills and mortgage. Ms. Lao currently pays the electricity, gas, and water bills. She assumed responsibility for these bills after the divorce decree. The remaining balance on the mortgage was $7,000 as of September, 2017. At deposition, Lao testified that she and Kraus own the subject property and that she had never heard of the trust, Fairview, or Mr. Baldwin. On July 16, 2012, the IRS granted Lao "innocent spouse relief" under 26 U.S.C. § 66(c), relieving her of any personal tax liability for items of community income attributable to Kraus.

During discovery in this case, Kraus provided monthly bank records for Kraus Diamond Specialty from 2001–2004. In deposition, Kraus and Tad Kraus testified that the bank statements and reported gross receipts were accurate representations of Kraus Diamond Specialty's gross income. They also testified that the majority of the expenses were business related.

On December 28, 2006, the IRS recorded notice of federal tax liens against Kraus in Pierce County for his 2001–2004 federal income taxes. On October 19, 2009, a notice

of a federal tax lien against Kraus was recorded for Kraus's 2001–2007 frivolous submission penalties. On March 14, 2016, a refiled notice of a federal tax lien was recorded for Kraus's 2001–2004 federal income taxes.

The Government worked with IRS Agent Zamudio to recalculate Kraus's federal income tax liabilities for 2001–2004 based on records and deposition testimony provided in discovery for this case. The recalculation includes additional reductions for business expenses, as documented by cancelled checks, excludes income from the sale of Kraus's former residence in 2003, the child tax credit and additional child tax credit, and personal exemptions for each of his children. The recalculation then applies deductions, exemptions, penalties and interest under 26 U.S.C. § 6651(a)(1), additional failure to file penalties under 26 U.S.C. § 6651(a)(2), and failure to pay estimated tax penalties under 26 U.S.C. § 6654(a) for the years 2003 and 2004.

Under the recalculation, Kraus's tax liabilities are a total of $90,824.96 (including amounts of $4,356.33 for 2001, $3,678.20 for 2002, $48,523.00 for 2003, and $34,267.43 for 2004) plus interest and statutory additions accruing from February 8, 2018. The amount sought for Kraus's unpaid civil penalties under 26 U.S.C. § 6702 for frivolous submissions in 2001–2007 remains at a total of $93,826.44, plus interest and statutory additions accruing form January 31, 2018.

### III. DISCUSSION

**A.     Tax Assessments and Frivolous Submission Penalties**

The government moves for summary judgment in this case to reduce the tax assessments against Kraus to a judgment. Under 26 U.S.C. § 7402(a), the Court can

render judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws." The government bears the burden of proof in an action to collect tax and "can usually carry its initial burden . . . merely by introducing its assessment of tax due." *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). The government's deficiency determination is presumptively correct and will be affirmed as long as it is rationally based. *Rapp v. Comm'r*, 774 F.2d 932, 935 (9th Cir. 1985). For assessments involving unreported income, the presumption attaches if the assessments are supported by a "minimal evidentiary foundation." *Stonehill*, 702 F.2d at 1293; *Weimerskirch v. Comm'r*, 596 F.2d 358, 361–62 (9th Cir. 1979).

If the Government introduces some evidence linking the taxpayer to income-producing activity, the burden shifts to the taxpayer to rebut the presumption by showing by a preponderance of the evidence that the government's determination of income is arbitrary or erroneous. *Rapp*, 774 F.2d at 935; *Keogh v. Comm'r*, 713 F.2d 496, 501 (9th Cir. 1983). If the presumption is overcome, the burden of proving the receipt of income reverts to the government. *Keogh*, 713 F.2d at 501.

The Government has submitted a convincing bank deposit analysis of Kraus Diamond Specialty's bank account through the use of deposits and gross receipts reported to the Washington State Department of Revenue. Dkts. 68-6, 68-7, 80-1. Kraus and Tad Kraus have testified that such records are accurate and that they were equal partners in the business. Dkts. 68-11, 68-12. In recent and convincing recalculations based on the discovery conducted in this case, the Government has shown that Kraus's tax liabilities for 2001–2004 reach a total of $90,824.96, which includes amounts of $4,356.33 for

2001, $3,678.20 for 2002, $48,523.00 for 2003, and $34,267.43 for 2004, plus interest and statutory additions accruing from February 8, 2018. Dkt. 80-1.

In response, Kraus has submitted the same frivolous arguments regarding this Court's jurisdiction and the "real party interest" rule that the Court has already disposed of in its previous order on August 16, 2017. Dkts. 69, 73, 79. Kraus's only argument not already rejected by the Court is that the Government has failed to carry its burden by articulating what law requires him to pay the assessed income taxes. Dkt. 73 at 5–6. However, his filing and payment obligations are set out in 26 U.S.C. § 6011 (duty to file returns in general); 26 U.S.C. § 6012 (duty to file income tax returns in particular); and 26 U.S.C. § 6151 (duty to pay tax at time return must be filed), and such arguments based on a purported lack of statutory authority for imposing federal income taxes have long been recognized as frivolous. *See Aldrich v. C.I.R.*, 106 T.C.M. (CCH) 192 (T.C. 2013). The Court need not continue to address such frivolous arguments "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit" when they plainly do not. *Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984).

Additionally, the Government has shown that Kraus has filed fourteen submissions to the IRS subject to penalties under 26 U.S.C. § 6702(a) for specified frivolous positions under 26 U.S.C. § 6702(c). *See* Dkt. 68-8. As stated above, the arguments Kraus have made have repeatedly been recognized as frivolous and Kraus has made no showing that "there is a reasonable basis for the tax treatment of such item by the taxpayer" under 26 U.S.C. § 6662(d)(2)(B)(ii)(II).

## B. Foreclosure of Tax Liens

The Government also seeks to foreclose on its tax liens on the subject property. In cases of tax delinquency like that of Kraus, the amount "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Congress intended such liens "to reach every interest in property that a taxpayer may have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719-20 (1985). If the Government establishes that it has liens upon certain property, it may foreclose those liens, sell the property, and apply the proceeds towards the tax liens at issue. 26 U.S.C. § 7403.

Accordingly, the liens will attach to the subject property if Kraus has an interest or right in the property. Although the subject property is purportedly held in trust, "[t]he Supreme Court has interpreted section 6321 to apply to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013). State law factors the Court must consider in determining whether the trust and Fairview are nominees of Kraus include:

> (1) Whether the nominee paid no or inadequate consideration paid by the nominee; (2) Whether the property was placed in the name of the nominee in anticipation of litigation or liabilities; (3) Whether there is a close relationship between the transferor and the nominee; (4) Whether the parties to the transfer failed to record the conveyance; (5) Whether the transferor retained possession; and (6) Whether the transferor continues to enjoy the benefits of the transferred property.

*United States v. Smith*, C11-5101 RJB, 2012 WL 1977964, at *5 (W.D. Wash. June 1, 2012). These factors are not a rigid checklist but should instead be considered under "the

ORDER - 11

totality of the circumstances." *Fourth Inv. LP*, 720 F.3d at 1072. "[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' '[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Drye v. United States*, 528 U.S. 49, 61 (1999) (quoting *Morgan v. Comm'r*, 309 U.S. 78, 83 (1940)).

The balance of these factors weighs heavily in favor of finding that the trust and Fairview are nominees of Kraus and the former marital community of Kraus and Lao. There was no consideration received by either Kraus or Lao in the transfers of the property. Dkt. 68-10 at 55; Dkt. 68-11 at 63–64. Kraus and Lao remained in the complete and exclusive possession of the property with no actual loss of rights in the property. Kraus has stated that the transfer was at least in part intended to shelter the property from creditors and litigation, Dkt. 68-11 at 60, and in light of Kraus's ongoing disputes over his tax delinquencies, litigation such as this case was plainly anticipated. Most importantly, Kraus has always remained in complete control of the property. As stated by Mr. Baldwin, there is nothing to prevent Kraus from having the subject property deeded back into his and Lao's names, and the terms of his agreement with Fairview expressly allow for him to do so. Dkt. 68-13 at 14–15. This type of "power to channel" the property assets warrants the conclusion that Kraus holds 'property' or a 'right to property' subject to the Government's liens. *Drye*, 528 U.S. at 61.

Lao argues that the legitimacy of the trust is an outstanding issue precluding summary judgment. *See* Dkt. 74 at 2–4. However, there is no genuine dispute over the facts establishing that the trust is fraudulent. A transfer may be fraudulent if it was made

by a debtor with actual intent to hinder, delay, or defraud a creditor, RCW 19.40.041(a)(1), or it may be constructively fraudulent if it was made without adequate consideration. RCW 19.40.041(a)(2). In this case it is clear that there was no adequate consideration. Also, the Government "can show actual intent to defraud when a taxpayer stops filing tax returns, creates a trust that is under the control of the taxpayer, transfers property into the trust, and retains full control and possession of the property after the transfer," *United States v. Smith*, C11-5101 RJB, 2012 WL 1977964, at *6 (W.D. Wash. June 1, 2012). As the Court has already discussed above, all of those conditions are satisfied in this case, and the trust is therefore fraudulent and invalid.

Lao further argues that allowing the Government to foreclose on the liens would render "innocent spouse relief" pursuant to 26 U.S.C. § 66 "an empty shell of false security." *See* Dkt. 74 at 2–4. The Court notes that innocent spouse protection does not entitle Lao to prevent foreclosure on the Government's tax liens. 26 U.S.C. § 66 only serves to protect an innocent spouse from personal liability and "nothing in [§] 66 authorizes the Internal Revenue Service to abrogate valid federal tax liens." *United States v. McGrew*, CV14-02647-RASX, 2014 WL 7877053, at *8 (C.D. Cal. Dec. 19, 2014), *aff'd*, 669 Fed. Appx. 831 (9th Cir. 2016). While innocent spouse relief prevents the assessment of a tax against Lao individually in any separate property she may possess, it does not affect the ability of the Government to pursue collection remedies against Lao's interest in community property. "Even though [Lao] [is] an innocent spouse, the liens still arose against all of [Kraus]'s property, and all of the community property available to satisfy [Kraus]'s debt." *United States v. Stolle*, CV 99-00823 GAF(CWX), 2000 WL

1202087, at *7 (C.D. Cal. Feb. 14, 2000). Kraus's tax liabilities all arose during Lao's and Kraus's marriage and the liens attached when those liabilities were assessed. Under Washington law, "all debts of each spouse that are acquired during the marriage attach to the marital community as a whole" and "[o]ne spouse's tax liabilities are presumed to be community debts if they are incurred during marriage." *United States v. Smith*, C11-5101 RJB, 2012 WL 1977964, at *6 (W.D. Wash. June 1, 2012). While Lao may have obtained innocent spouse relief in 2012 for her separate property, she has failed to produce any evidence to overcome the presumption that the federal tax liens attached to the whole of the subject property when the liabilities were assessed. Even if Lao ultimately obtained a separate property interest in the subject property after the divorce, she could only take that separate interest subject to any preexisting liens or mortgage. Therefore, the illegitimacy of the trust and Lao's separate interest in the subject property obtained after the divorce neither precludes the Government from foreclosing on its liens nor entitles Lao to any independent right in proceeds from the foreclosure sale that take priority over the tax liens. Any separate interest that Lao possesses in the subject property must lie in the equity that exceeds the preexisting mortgage and liens.

Nonetheless, the fact that Lao was granted innocent spouse relief leaves open a question not addressed by the parties. Although all the subject property may be used to satisfy all liens obtained against Kraus while it was part of the marital community, it is unclear whether those liens could continue to grow after Lao's interest in the subject property became separate property. In other words, the entire value of the subject property is subject to any liens that preexisted Lao's and Kraus's divorce because the

subject property was community property at the time those liens attached; but it is unclear if statutory interest or other penalties assessed after the divorce can be collected against the full value of the subject property or merely Kraus's now separate interest in any equity that exceeds all preexisting liens. It may be that statutory interest assessed against Kraus after the divorce would not attach as a lien to what had then become Lao's separate interest in the subject property. If this is the case, the Government, mortgagee, and any other creditors could collect all of their liens that preexisted the divorce from the foreclosure sale, after which any remaining proceeds would be divided between Lao and Kraus. Then the Government could collect from Kraus's proceeds any liens that attached to Kraus's interests in property subsequent to the divorce. However, because the parties have not addressed this issue, the Court requests supplemental briefing from the parties before making a final decision.[1] Additionally, the Court notes that Lao's claims of innocent spouse relief and the explanation of what tax years it entitles her to relief for should be supported by evidence more substantial than the single sentence assertion from her declaration currently relied upon by the parties.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion (Dkt. 68) is **GRANTED in part** and **RENOTED**, and Kraus's motion (Dkt. 69) is **DENIED**, as follows:

---

[1] The Court notes that this order's resolution of all other questions regarding the fraudulent nature of the trust and any implications that might arise from its illegitimacy could provide both the Government and Lao with the necessary perspective to reach a stipulation focused on this single outstanding issue.

1. Judgment is entered in favor of the Government against Kraus in the amount of $184,651.40, which represents: (1) the unpaid balance of $90,824.96 for federal income tax liabilities assessed against Kraus for the years 2001–2004 and accrued but unassessed interest and other statutory additions, and (2) $93,826.44 in civil penalties for frivolous submissions from 2001–2007 plus statutory interest. The Government is further entitled to statutory interest accruing after February 8, 2018 on Kraus's federal income tax liabilities and statutory interest accruing after January 31, 2018 on Kraus's frivolous submission civil penalties.

2. The Government has valid and subsisting federal tax liens on all property and rights to property of Kraus, including the subject property.

3. Lao has no independent right to any proceeds from the sale of the subject property that takes priority over liens preexisting the divorce;

4. The trust and Fairview are nominees of Kraus and the former marital community of Kraus and Lao and transfers involving the trust and the subject property were fraudulent and have no effect on the liens of the Government;

5. The Government's tax liens encumbering the subject property are foreclosed and the subject property shall be sold pursuant to 26 U.S.C. § 7403 and 28 U.S.C. § 2001, and the net proceeds be applied toward the satisfaction of the federal tax liens;

6. The proceeds from the sale described above will follow the priority stipulated to by the Government, American Mortgage Network, Inc., Ditech Financial, LLC, and Pierce County, Washington;

7. Once every named defendants' interest in the subject property is resolved in this case, the Government will submit an order of sale of the subject property for approval by the Court.

8. The Government's motion is **RENOTED** for consideration on April 20, 2018, regarding the effect of Lao's innocent spouse relief on liens arising from interest assessed after Lao's and Kraus's divorce. The Government and Lao may submit simultaneous supplemental briefs, not to exceed ten (10) pages, no later than April 16, 2018. The parties may file responses to the supplemental briefs, not to exceed five (5) pages, no later than April 20, 2018.[2]

Dated this 3rd day of April, 2018.

*/s/ Benjamin H. Settle*
BENJAMIN H. SETTLE
United States District Judge

---

[2] The parties do not need to submit supplemental briefing if they can reach a stipulation on this issue. Such a stipulation could be set forth in the order of sale to be submitted by the Government.